UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THERESE A. HACKL and RICHARD HACKL,

        Plaintiffs,
and

UNITED HEALTHCARE OF WISCONSIN and
BLUE CROSS BLUE SHIELD OF WISCONSIN,

        Involuntary Plaintiffs,

v.                                                    Case No. 08-CV-871

ICON HEALTH & FITNESS, INC.,
SEARS ROEBUCK & COMPANY, and
LEXINGTON INSURANCE COMPANY,

        Defendants.

## ORDER +

Plaintiff Therese A. Hackl ("Mrs. Hackl") was using a piece of home exercise equipment when one of the pedal springs broke and she fell, injuring her knee. Mrs. Hackl underwent multiple arthroscopic surgeries and claims long-term effects from her injury. Mrs. Hackl and her husband filed this product liabilities action against defendant Icon Health & Fitness, Inc. ("Icon"), the company which manufactured the fitness equipment, defendant Sears Roebuck & Company ("Sears"), which sold them the equipment, and defendant Lexington Insurance Company, the company which issued a liability insurance policy implicated by the suit. The Hackls allege strict liability and negligence.

The parties each filed a motion that remains pending before the court. The defendants filed a motion to exclude expert testimony from Mrs. Hackl's treating orthopedic surgeon predicting that she will need a knee replacement at some point in the future. The defendants attack the reliability of the testimony and urge the court to exclude it as unsupported speculation. The Hackls filed their own unrelated motion for summary judgment. They ask the court to enter judgment in their favor on the issue of liability and to declare that the defendants are liable for all injuries and damages resulting from the pedal spring failure. For the reasons stated below, the court will deny both the motion to exclude expert testimony and the motion for summary judgment on liability.

## BACKGROUND

The Hackls purchased a ProForm 650 Cardio Cross Trainer ("Proform 650") from a Sears store on December 21, 2002. The ProForm 650 is an elliptical exercise machine[1] designed, sold and distributed by Icon and offered for sale by Sears in its department stores. After purchasing the product at a Sears store in Greendale, Wisconsin, Mr. Hackl took the machine home and assembled it according to the included instructions. The Hackl family used the ProForm 650 without incident for the next three years. However, on June 7, 2006, Mrs. Hackl was

---

[1] An elliptical exercise machine is a piece of stationary exercise equipment used to simulate walking or running without causing pressure to the joints. Dictionary.com, http://dictionary.reference.com/browse/elliptical+trainer (last visited June 8, 2010).

exercising when the left side "pedal spring" broke and she fell and sustained a knee injury.

In support of her claims of injury, Mrs. Hackl obtained the expert testimony of Dr. Jonathon Berry, her treating orthopedic surgeon. Dr. Berry performed three arthroscopic surgeries on Mrs. Hackl between July 2006 and February 2009. He also completed three letter reports for this litigation, which constitute his Rule 26(a)(2)(B) written expert report. In his second letter report, dated November 14, 2007, Dr. Berry predicted that Mrs. Hackl will likely need a total knee replacement in the future, stating:

> ...I would have to say that it is more probable than not that she will need an arthroscopy, eventually I believe, it is more probable than not that she will need a total knee arthroplasty. These will likely be years down the road.

However, Dr. Berry did not repeat this contention in his third letter report, dated April 28, 2009. Instead, his update on her condition reads in relevant part:

> As much as I would anticipate that surgical treatment for this injury is complete, and I can in no way guarantee that there will be no need for any further either surgical treatment or physical therapy. At this point, she is doing well and as long as she does the home physical therapy or home therapy, she will continue to have minimal symptoms.

These statements form the basis for the defendants' motion to exclude expert testimony. They contest Dr. Berry's conclusion regarding Mrs. Hackl's future need for a knee replacement and seek to have that particular testimony excluded for a lack of reliability under Federal Rule of Evidence 702.

In addition to their medical expert testimony, the Hackls also procured expert testimony regarding liability. The Hackls obtained a report from Thomas Proft, P.E., regarding the cause of the pedal spring failure in the Hackls' ProForm 650 equipment. Mr. Proft concluded that the failure was attributable to a defective design and/or material because there was no indication that the machine was used for an unintended purpose. The Hackls now offer Mr. Proft's conclusions in support of their motion for summary judgment on liability.

## ANALYSIS

**I.    Motion to Exclude Expert Testimony**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the decision of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 permits a witness qualified as an expert to provide opinion testimony if that testimony is: 1) based upon sufficient facts or data; 2) the product of reliable principles and methods; and 3) provided by a witness who applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The court is the "gatekeeper" for such expert testimony and will only permit the admission of expert witness testimony that is both relevant and reliable. *Daubert*, 509 U.S. at 589. In fulfilling this role and evaluating expert witness testimony, the court uses a three-step analysis. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). The court first determines whether the witness is qualified as an expert based on knowledge, skills, experience, training or education. *Id.* The court next determines whether the expert's reasoning

-4-

underlying the testimony is scientifically reliable. *Id.* Finally, the court must confirm that the testimony is relevant. *Id.*

The defendants seek to exclude Dr. Berry's expert testimony regarding Mrs. Hackl's need for a future knee replacement. They do not question Dr. Berry's qualifications or the relevance of his statement to the case. Instead, the defendants raise issue with the "reliability" step of the expert testimony analysis. They assert that Dr. Berry's prediction does not clear the *Daubert* reliability hurdle because Dr. Berry bases his prediction on experience and observation, and does not cite to research or literature. However, the court is unable to conclude that Dr. Berry's statement is impermissibly unreliable or speculative.

Dr. Berry premises his testimony that Mrs. Hackl will likely need a knee replacement on several legitimate bases. First, Dr. Berry bases his medical prediction on his treatment and observation of Mrs. Hackl's injuries. As part of his care, Dr. Berry performed three surgeries on Mrs. Hackl's knee and was able to conduct visual inspections inside the joint. He noted a significant loss of medical meniscus and degenerative changes in her articular cartilage. (Dr. Berry Depo., at 10-13). Second, Dr. Berry bases his medical prediction on 20 years of experience practicing board certified orthopedics and his general evaluation of Mrs. Hackl's patient characteristics, including gender, age, weight, activity level and postsurgical condition. (Id. at 20-24). The court deems Dr. Berry's conclusion about the future course of Mrs. Hackl's existing condition to be adequately supported.

The fact that Dr. Berry cannot cite to a specific study or medical literature does not mean that his conclusion "fails" the *Daubert* test for reliability. His conclusion applies to a particular patient whose knee is in a particular state with particular levels of meniscus and cartilage damage. Thus, Dr. Berry cannot possibly point to a study or article involving patients with Mrs. Hackl's exact medical situation. Instead, Dr. Berry's considerable personal experience in orthopedic patient treatment and his citation to specific medical facts about Mrs. Hackl's knee render his expert testimony sufficiently reliable to make it past the "gateway" set up by *Daubert*.

Further, the cases cited by the defendants regarding the application of Daubert criteria to medical expert testimony are distinguishable. The defendants cite to *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607 (7th Cir. 1993) and *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316 (7th Cir. 1996). *Porter* and *Rosen* involve the use of medical expert testimony to establish causation between the particular product at issue and the plaintiff's injuries. *Porter*, 9 F.3d at 609-10, 614-15 (addressing admissibility of expert testimony regarding the causation between ibuprofen and the plaintiff's renal failure); *Rosen*, 78 F.3d at 317-19 (addressing the admissibility of expert testimony regarding the causation between a nicotine patch and a heart attack). In contrast, the instant case involves expert testimony provided by Mrs. Hackl's treating surgeon regarding the future medical effects of her knee injury. The *Porter* and *Rosen* cases provide little useful guidance on the issue before the court here, namely, whether a medical treatment provider's prediction about the plaintiff's

future medical treatment needs is too speculative to pass muster under the rules of evidence.

The court finds that Dr. Berry's statement that it is more probable than not that Mrs. Hackl will require a knee replacement is sufficiently reliable under a *Daubert* analysis. The statement arises from medical treatment, personal observation, and substantial professional experience and justifies admission of Dr. Berry's conclusions to a jury. Therefore, the court is constrained to deny the defendants' motion to exclude the expert testimony.

## II.     Motion for Summary Judgment

The court now turns to the motion for summary judgment filed by the Hackls. A district court may appropriately grant summary judgment when the moving party establishes that there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party opposing summary judgment cannot simply rest on allegations or denials in its pleadings, but rather, it must introduce affidavits or other evidence setting forth specific facts showing a genuine issue for trial. *Anders v. Waste Management of Wisconsin*, 463 F.3d 670, 675 (7th Cir. 2006). The court views all facts and draws all reasonable inferences in favor of

-7-

Case 2:08-cv-00871-JPS   Filed 06/08/10   Page 7 of 11   Document 83

the nonmoving party. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006).

The Hackls ask the court to grant summary judgment in their favor on the issue of liability. They point to the report written by their liability expert, Mr. Proft, as support for the motion. Mr. Proft's report states that the failure of the left pedal spring on the ProForm 650 was due to fatigue cracking and ultimate fracturing of the spring. He also states that the "cause" of the cracking could be due to a "number of factors" and identifies three such factors:

> The ultimate "cause" of the cracking can be due to a number of factors including the imposition of loads above those intended for the component, a defective design that results in stresses above the fatigue limit of the material in normal use or a defective condition in the material that resulted in a lower than expected fatigue strength.

(Proft Report, Dk #66, Miller Aff., Ex. A, at 3). However, he then discounts one of his identified potential factors – misuse – and concludes that the cause of the cracking must be one of the other two possible factors:

> Since there is no indication of the machine being used for anything other than its intended purpose, the failure is attributed to a defective design and/or material.

(Id.). The Hackls rely on this statement to establish strict product liability based on a defective design or material. They assert that Mr. Proft's report and their proposed findings of fact sufficiently establish the five required elements for strict product liability and conclude that they are entitled to summary judgment on liability because the defendants have "no defense."

-8-

However, the Hackls fail to establish the absence of any genuine issue of material fact regarding liability. Summary judgment is not appropriate here because a question remains about what caused the pedal spring to fail. There are several reasonable inferences that may arise from the evidence presented by the parties. The Hackls rely upon the three-page report of Mr. Proft and their own testimony stating that the elliptical exercise machine was never used for an improper purpose to establish that the cause of the spring failure must be a defective design or material. However, the defendants have demonstrated that a genuine issue of fact exists regarding the cause of the failure by pointing to the affidavit testimony of Laurel Jensen ("Jensen"), the Director of Product Safety for ICON. Jensen avers that ICON sold more than 30,000 ProForm 650 elliptical machines and that the company has received only one other report of a broken pedal spring. (Dk #78, Jensen Aff., at 1-2).

This evidence allows a fact-finder to infer that misuse was the cause of the product failure and not defective design or materials. First, the credibility of the Hackls' testimony stating that they only used the machine for intended purposes is a matter for evaluation by the jury, not the court. Second, a jury could reasonably conclude that the frequency of pedal failures would be much greater than 2 out of 30,000 if design or material defects existed. The inference that misuse may have caused the pedal spring failure is not precluded by Mr. Proft's report, despite the assertions of the Hackls. Mr. Proft acknowledges the existence of multiple, plausible

-9-

causes for the pedal spring failure and identifies unintended use of the exercise machine as one potential cause.

Mr. Proft does conclude that the pedal spring failure "must have" been caused by a defective design or material. However, he makes this statement *only after* assuming that the machine was not subject to any unintended usage. He concludes that defects must have given rise to the pedal failure "since there is no indication of the machine being used for anything other than its intended purpose." However, he assumes that no misuse occurred simply because he was not provided with any evidence of such, not because the physical evidence of the spring fracture precludes the possibility that the machine was used for unintended purposes. Mr. Proft does not claim any personal knowledge about the Hackls' use of the elliptical machine, nor does he note any physical characteristics of the pedal spring fracture that precludes the possibility that misuse underlies the product failure. Mr. Proft's conclusion of defective design or material is based solely upon his visual examination[2] of the pedal spring and not upon any testing for metallurgical deficiencies or review of the specifications.[3] Consequently, the court disagrees that

---

[2]Mr. Proft's report notes that he conducted a visual examination and a stereomicroscopic examination. However, he provides no explanation for what these examinations entail. The names suggest examination with the naked eye and with the use of a stereo microscope for magnification.

[3]The "Conclusions" section of Mr. Proft's report includes the following statements noting the lack of any testing of the product material:
> Destructive testing of the spring, including chemical analysis, metallography and micro and macro hardness testing would be required to determine if there are any metallurgical deficiencies. These results would also be compared to the material specifications, which to date, have not been provided.

(Proft Report, Miller Aff., Ex. A, at 3)

-10-

Case 2:08-cv-00871-JPS   Filed 06/08/10   Page 10 of 11   Document 83

Mr. Proft's report renders product failure as a result of misuse of the ProForm 650 an unreasonable inference or that a jury could not find in favor of the defendants.

The evidence allows for several, conflicting inferences regarding the cause of the pedal spring failure that resulted in Mrs. Hackl's injuries. A court faced with this situation must draw all reasonable inferences in favor of the non-moving party. *See Tanner*, 433 F.3d at 915. Here, the court must draw the inference that the product failure may have been caused by unintended use of the exercise equipment and deny the Hackls' motion for summary judgment on the issue of liability. The issue is one for resolution by a jury.

Accordingly,

**IT IS ORDERED** that the defendants' motion to exclude the expert testimony of Dr. Berry (Docket #55) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion for summary judgment on liability (Docket #63) be and the same is hereby **DENIED.**

Dated at Milwaukee, Wisconsin, this 8th day of June, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge